E. ARTHUR ROBINSON, trustee in bankruptcy, *vs.* WALTHAM TRUST COMPANY.

SAME *vs.* WALTHAM NATIONAL BANK.

Middlesex.     January 4, 1934. — February 16, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & FIELD, JJ.

*Trust,* For benefit of creditors. *Fraud. Notice.*

An insolvent corporation offered to pay assenting creditors a certain percentage of their claims in full satisfaction thereof, and made an assignment of its assets to a trustee to carry out the terms of such compromise offer and to pay any surplus back to it for distribution by it among its stockholders. The trustee opened an account with a bank. The bank had a claim against the corporation upon a note of the corporation and upon a note of a customer of the corporation payable to it and discounted with the bank. The bank assented to the compromise offer and received certain sums against the note of the corporation to it, but nothing on account of the customer's note. Upon the customer's note falling due, it was renewed by the maker, indorsed by the corporation, discounted by the bank, and the proceeds of the discount placed to the credit of the trustee with the bank. The maker of the discounted note having failed to pay such a renewal note, the bank charged the amount of it against the trustee's account.

The assets of the corporation were insufficient to permit the trustee to pay the agreed percentage to the creditors who assented to the compromise, so that there was no surplus to be returned to the corporation or its stockholders. Three years after the assignment to the trustee, the corporation was adjudicated a bankrupt. An action, brought by the trustee in bankruptcy against the bank to recover the sum so charged against the account with the defendant of the trustee under the assignment, was not based on a contention that such deduction was a preference. So far as appeared, such deduction was made with the assent of every creditor of the corporation. It did not appear that all the creditors did not assent to the compromise offer and the assignment to the trustee or that the creditors in the bankruptcy proceedings were nonassenting creditors. *Held,* that the plaintiff had no right to maintain such action and could not recover.

Two ACTIONS OF CONTRACT. Writs dated February 6, 1932.

The actions were heard together in the Superior Court by *Broadhurst,* J., without a jury. Material facts are stated in the opinion. The judge found for the plaintiff, in the first action in the sum of $4,079.39 and in the second action in the sum of $2,609.33. The defendants alleged exceptions.

*J. J. Flynn, Jr.,* for Waltham Trust Company.

*W. J. Bannan,* (*J. L. Harvey* with him,) for Waltham National Bank.

*E. A. Whitman,* (*A. I. Zimon* with him,) for the plaintiff.

PIERCE, J. These are two actions of contract brought by the plaintiff in his capacity as trustee in bankruptcy of the W. A. Webster Lumber Co., to recover certain sums of money which, he alleges, should properly have passed into his possession. The answer of each defendant is general denial and payment. The actions were tried together without a jury. At the close of the evidence each defendant filed requests for rulings, in substance that upon all the evidence the plaintiff cannot recover on any one of the counts of the declaration numbered 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10. The trial judge denied the requests of the Waltham Trust Company except as to counts 5 and 10, and of the Waltham National Bank except as to counts 1 and 6 and 5 and 10. To the denial of these requests each defendant duly excepted. The plaintiff filed three requests for rulings which were granted: (1) "When a note by a company is discounted with a bank and is dishonored at maturity by the maker, and the

bank charges the amount of the note against an account that constitutes payment of the note"; (2) "If a new note is given to take the place of the old by the maker, while called a renewal note, it is in law a new obligation upon which the company borrows money. The fact that the two transactions wash each other constitutes in legal effect no connection between the two transactions"; and (3) "The trust company having charged the amount of the dishonored note against an account other than that of the company discounting the note is obtaining payment of the note from persons who are under no obligation to pay it and the trust company therefore is responsible for the amount so deducted from the account to which the note is charged." The Waltham Trust Company duly excepted to the above rulings. In each action the defendant filed a motion "that judgment be entered for the defendant . . . on each count and requests for rulings," and duly excepted to the denial of the motion. The judge found for the defendant under counts 1 and 6, 5 and 10, and for the plaintiff on each of the other counts.

The actions are before this court on a "Consolidated Bill of Exceptions." The material facts are as follows: The plaintiff on October 29, 1931, was appointed trustee in bankruptcy of W. A. Webster Lumber Co. (hereinafter called the lumber company) which was adjudicated a bankrupt on July 30, 1931. Plaintiff's counsel stated at the trial, and now states in his brief, that no question of preference under the bankruptcy act is here presented. The cases are considered on that footing. On October 27, 1928, the lumber company, then insolvent, offered in writing to pay all its creditors in full satisfaction of their claims seventy-five per cent thereof, payable forty per cent in cash by November 1, thirty per cent in notes indorsed by W. A. Webster, senior, payable in four months from November 1, and five per cent in notes of the company indorsed by W. A. Webster, junior, payable in one year. Acceptance forms sent with the offer stated that it would be binding on assenting creditors when and if seventy-five per cent in amount of all the creditors assented. The forms also contained space for statement of the amount of the creditors' claims. There is nothing in

the record which discloses what percentage of the creditors of the lumber company assented, other than inference that at least seventy-five per cent assented, and nothing which discloses that the creditors of the lumber company when it was adjudicated bankrupt in July, 1931, were nonassenting creditors of the lumber company in October or November, 1929.

On November 9, 1928, the lumber company, by a written agreement with William A. Webster, senior, and James E. Cussen, declared its purpose to liquidate and transferred to them all its assets in trust, including "All debts, demands, notes and accounts receivable, chose in action, or other claims" for the purpose of carrying out the terms of the compromise offer and paying any surplus back to the company "for distribution by it amongst its stockholders." Each of the defendants signed and returned an acceptance of the offer. The trust company's acceptance stated the amount of its claim as $12,467.05. The direct obligation of the lumber company on its own notes to the trust company was $7,000 for money borrowed. It was also liable as indorser on its customers' notes which it had discounted with the trust company to the amount of $5,467.05. The national bank's acceptance stated the amount of its claim as $16,375.45. The direct obligation of the lumber company on its own notes to the bank was $9,000 for money borrowed. It was also liable as indorser on its customers' notes which it had indorsed and discounted with the bank. W. A. Webster, senior, was liable as indorser upon the notes given to the trust company and the bank. "As the defendants saw that Webster senior's endorsement of their notes would be weakened if he endorsed notes for thirty per cent of all the lumber company's liabilities, they did not accept the offer until after he had furnished each of them with his personal written guarantee, secured by a deposit of his stock in Dix Lumber Company, that the lumber company's obligations to each defendant, both direct and contingent, should be paid in full, as well as his own obligations."

The lumber company's checking account in the bank was closed on October 25, 1928, and in the trust company on

November 5, 1928. Thereafter it had no account in either bank or trust company. The lumber company sold its real estate just before making the assignment in trust. The trustees received the proceeds of the sale on November 10, 1928, and on November 14 and 21, 1928, opened checking accounts with the defendants in their respective names as "Trustees for W. A. Webster Lumber Co. in liquidation." All deposits to the accounts of the trustees were made by them out of the sale or 'collection of assets or by discounting renewal notes of customers.

Soon after the trustees were appointed, the company's notes were issued to assenting creditors as stated in the offer and assignment. The first cash distribution under the company's settlement of forty per cent was made in December, 1928. There was then paid in cash to the trust company $2,800 on the direct obligation of the lumber company. There was no dividend paid to the trust company on the customers' notes which had been discounted by the trust company for the lumber company. At that time there was paid in cash to the bank $3,600 on $9,000, which was the amount of the direct obligation of the lumber company. There was no dividend paid the bank on account of the customers' notes which it had discounted for the lumber company. The second cash distribution under the terms of the company's settlement was made by the trustees in April, 1929. It consisted of a payment of twenty-four per cent, and, in the cases of the trust company and the bank, was paid as in the first instance upon the direct obligations of the lumber company to the trust company and to the bank. The trust company and the bank, respectively, have never received any payment on account of the contingent liabilities of the lumber company as indorser of its customers' notes. The circumstances which led up to the second cash payment in April, 1929, are in substance as follows: As maturity of the thirty per cent notes approached the due day of March 1, 1929, it became apparent that the trustees could not pay them, and the creditors were asked to accept renewals payable in one month, also indorsed by Webster, senior. Be-

fore consenting to accept renewals the trust company and bank on February 23, 1929, obtained from the trustees and Webster, senior, a written agreement extending to those notes the collateral security (Dix Lumber Company stock) already held by the bank under the agreement with Webster, senior, of November 10, 1928. The trustees were unable to pay the renewal thirty per cent notes when they became due on April 1, 1929, but during the month of April made the second cash distribution to creditors of twenty-four per cent as above stated. No further payments were made by the trustees to any creditors but, in January, 1930, Webster, senior, paid the trust company and the bank out of the proceeds of sale of his Dix Lumber Company stock the unpaid balance of their claims on the direct obligations of the lumber company. The total amount paid by the trustees to the trust company was $4,480, and to the bank $5,760. These sums were sought to be received by the plaintiff under count 10 of each declaration on the theory that the making of the payments to the defendants was a fraud on the company or its creditors by the trustees. The trial judge ruled that the trustees in making the payments and the defendants by accepting them committed no fraud on the lumber company or its creditors.

"When the trustees were appointed each defendant held the four notes of customers of the lumber company referred to in counts 1 and 6, 2 and 7, 3 and 8, and 4 and 9 of the respective amended declarations. All these notes had previously been endorsed by the lumber company and its account had been credited with the proceeds of discount. The note described in counts 2 and 7 of the declaration against the Trust Company was already overdue. All the others fell due on or after November 9, 1928. The company's bookkeeper was retained in the employ of the Trustees and either she or the trustee Webster, senior, handled all matters pertaining to the renewal of these notes after maturity. All of the customers' notes in suit held by the defendants on November 9 were renewed by the makers, either for the same amount plus accrued interest and protest fees, or for a smaller sum if the maker paid anything on account, with

accrued interest and protest fee added when incurred. In all or nearly all cases the renewal notes when received from the makers were sent to the banks by the trustees for discount, bearing the lumber company's but not the trustees' endorsement, and the proceeds were credited to the account of the trustees. In some instances as many as four successive renewal notes were given by customers to the lumber company and discounted by the banks which credited the proceeds to the trustees' account. In the case of every note on which the plaintiff's claims are founded, the maker failed to pay the last note of the series at maturity, and in every case each bank charged the trustee's account with the amount due on such note, with accrued interest and protest fees."

The contention of the plaintiff in support of his alleged claim rests upon the propositions (1) that the defendants knew that the trustees when they opened the checking accounts with them on November 14 and November 21, 1928, respectively, were assignees for the benefit of creditors; that they were settling the affairs of the lumber company which was insolvent and in liquidation; (2) that the judge ruled, without exception saved by either defendant, that each defendant is chargeable with knowledge of the terms of the assignment because each of them was bound to know the extent of the authority of the trustees in dealing with the property of the trust; (3) that, in equity, one receiving funds in violation of a trust with knowledge of the trust becomes himself a trustee and liable to account as such in his own wrong; *Tingley* v. *North Middlesex Savings Bank*, 266 Mass. 337, 340, and cases cited; (4) that the defendants, having charged the amount of the dishonored notes against an account (the trustees' account) other than that of the company (the lumber company) discounting the notes, are obtaining payment of the notes from persons under no obligation to pay them, and the defendants therefore are responsible for the amounts so deducted from the accounts of the trustees to which the notes are charged; and (5) that the trustees here deposited moneys "collected in the course of liquidation, in the defendant banks in their own names 'in

liquidation' ''; that the deposit "created the relation of debtor and creditor between the banks and the trustees"; and that the defendants "had no right to charge against the accounts of these trustees debts due them from the bankrupt," even though the trustees did approve and ratify these charges, "because under the assignment the trustees had no right to give this direction," citing *May* v. *Henderson*, 268 U. S. 111. The plaintiff also contends that the trustees were in no sense agents of the lumber company, and that there is nothing in the assignment to give any color of right or power to them to act as agents of the insolvent lumber company or at its behest; that the defendants were fully protected for payment in full of their claims by the Dix Lumber Company stock transferred as security to them by Webster, senior. He finally contends that the transactions here complained of "were in an effort to reduce the amount Webster would be called on to pay out of his own funds under this guaranty with the Dix stock and so benefit him at the expense of the creditors of the corporation," and to "that extent there was a plain fraud on such creditors." That there are such creditors the present bankruptcy proceedings testify.

The answer to these several positions of the plaintiff is that the trial judge found that the defendants had no actual notice of the trust agreement or of its terms, but that they were chargeable with constructive knowledge of the authority of trustees because they were bound to ascertain the extent of such authority in their respective dealings with the property of the trust; and that such dealings were free of fraud. So far as the record discloses, they were with the assent of every creditor of the lumber company. There is no finding that the creditors in the bankruptcy proceedings, which were instituted about three years after the offer and the assignment of all the assets of the company to the trustees for the benefit of creditors named in a schedule attached to the assignment, were not all the creditors existing at the time of the assignment. Nor are there any facts which disclose that all creditors did not assent to the terms of the offer and assignment. Nor are there

any facts, other than the fact of an adjudication of bankruptcy of the lumber company, upon which an inference can be based that the creditors in the bankruptcy proceedings were nonassenting creditors at the time the offer and assignment were made and executed.

It is plain the plaintiff has a standing here only upon the theory that, at the termination of the trust, the trustees after conforming to the provisions of the trust instrument had in their possession, or should have had, moneys which the defendants were not entitled to hold, and which, under the assignment, were a part of the surplus belonging to the lumber company or to its stockholders. On the facts found the trustees did not have sufficient assets of the lumber company to pay the seventy-five per cent to assenting creditors, whether such creditors equalled seventy-five per cent in amount of all the creditors or one hundred per cent in number and amount of said creditors. In either event there was no surplus payable to stockholders or to the corporation; and consequently no money of the lumber company to vest in the plaintiff by virtue of his office as trustee in bankruptcy of the lumber company. At law the plaintiff's right, if any, is against the trustees because, if there is anything due from the defendants to the trustees, that sum is to be distributed to the extent of seventy-five per cent of their claims to the assenting creditors and not to the general creditors.

On all the facts we are of opinion the plaintiff has not shown any right to maintain the actions. It follows that in each action the entry must be

*Exceptions sustained.*
*Judgment for the defendant.*